IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES SMITH,
    Plaintiff,

v.                               CIVIL ACTION NO. DKC-09-2178

STATE OF MARYLAND, et al.,
    Defendants.

## **MEMORANDUM OPINION**

On August 18, 2009, the court received Plaintiff James Smith's civil rights complaint seeking compensatory damages. Paper No. 1. Smith, an inmate incarcerated at the Western Correctional Institution, alleged that his religious programming had been interrupted, he was improperly confined on segregation status, the conditions of his confinement were improper, he was denied his property, his visitor was improperly singled out and harassed, and that these actions were undertaken based on Plaintiff's religious affiliation. *Id*. Defendants State of Maryland and Warden J.P. Morgan have filed a Motion to Dismiss, or in the Alternative for Summary Judgment. Paper No. 11. Plaintiff has not filed an opposition.[1] No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2009). For the reasons stated below, the dispositive motion filed by Defendants, treated as a motion for summary judgment, will be granted.

### **Background**

Smith alleges that he is the Islamic Coordinator for the Nation of Islam at the Western Correctional Institution. He states that several times in June of 2009, his weekly Islamic services were interrupted and he was advised that he could not teach African and African-American history

---

[1] Pursuant to the dictates of *Roseboro v. Garrison*, 528 F.2d 309, 310 (4th Cir. 1975), on December 8, 2009, Plaintiff was notified that Defendants had filed a dispositive motion, the granting of which could result in the dismissal of his action. Paper No. 12. Plaintiff was also informed that he was entitled to file materials in opposition to that motion within seventeen (17) days from the date of that letter and that his failure to file a timely or responsive pleading or to illustrate, by affidavit or the like, a genuine dispute of material fact, could result in the dismissal of his case or in the entry of summary judgment without further notice of the court. *Id.*

to the members of the group. He states that one of the officers was chewing tobacco when the services were interrupted. He further states that he has been placed on segregation for long periods of time which prevents him from earning diminution of confinement credits. He states that when he was placed on administrative segregation he was unable to access his property for seven days and not allowed to shower for five. Plaintiff claims that his visitor, Shelia Bullock,[2] was harassed and "stripped searched and forced to lift up her veil which is never done." Paper No. 1.

The uncontroverted records demonstrate that on June 8, 2009, Plaintiff wrote to Warden J. P. Morgan complaining that Shelia Bullock, a Muslim, visiting Muslim inmate Gregory Washington, had been mistreated. Plaintiff indicated his belief that Ms. Bullock was mistreated due to her faith. Paper No. 11, Ex. A, p. 4-5. Plaintiff noted Ms. Bullock's objection to being "stripped searched," and having to lift her veil, as well as her complaint that she was escorted from the visiting room by a correctional officer who believed her behavior was disruptive.

Plaintiff's complaint was referred for investigation. *Id*. WCI Institutional Direction 195-1.VI.C.3, concerning security procedures for visitors to the institution, states that all visitors entering and leaving the WCI gatehouse are subject to search, including a visual mouth inspection, and/or random frisk searches. *Id*., p. 9, 23, 31, and 33. Refusal to comply results in denial of visitation. Investigation revealed that Ms. Bullock was asked to raise her veil for a visual mouth inspection in accordance with security protocols. She was not stripped searched. *Id*.

While investigating Plaintiff's complaint of mistreatment of Ms. Bullock, correctional employees uncovered evidence that Plaintiff and Washington were conspiring to disrupt institutional

---

[2] Plaintiff refers to "Shelia Bullock." Defendants refer to "Sheila Bullock." For ease of reference the court shall refer to Shelia Bullock.

activities by having Muslim inmates and visitors refuse to leave the waiting room. Both men were placed on administrative segregation on July 17, 2009, pending further investigation into the alleged conspiracy. *Id.,* p. 8-9, and 83.

When Plaintiff was placed on administrative segregation, his property was packed up and moved to Housing Unit 5 where it was to be inspected prior to be returned to him after inspection. This comported with prison regulations. *Id*., p. 9, 80-82. On July 22, 2009, Plaintiff wrote to the Warden complaining about not having received his property, specifically his undergarments and hygiene items. *Id.,* p. 79. The Warden ordered an investigation and the property was returned to Plaintiff on July 24, 2009, seven days after his assignment to administrative segregation. *Id*., p. 77, 78.

Plaintiff's segregation confinement sheet for July of 2009, demonstrates that he showered on July 20, 2009, three days after being assigned to administrative segregation, and showered an additional six times over fifteen days. This exceeded Division of Correction Directives, which required he be given four showers during that period. *Id.,* p. 89-90.

The investigation concerning Plaintiff's activities with inmate Washington were concluded on September 1, 2009. At that time, it was recommended that Plaintiff and Washington be removed from administrative segregation, returned to general population, and Washington moved to another institution. *Id*., p. 8. Plaintiff returned to general population on September 2, 2009. *Id*., p. 88. During this time period there were no disruptions to the regularly scheduled meetings and activities of WCI's Nation of Islam group. *Id*., p. 10-12, 39-65.

Other than filing the two letter complaints with the Warden indicated above, Plaintiff did not file any formal administrative remedy procedure requests concerning any of the allegations in his

3

complaint, *id*. p. 91, nor did he file any grievance with the Inmate Grievance Office concerning these matters. *Id*., Ex. B.

## Standard of Review

Fed. R. Civ. P. 56(c) provides that summary judgment:

> should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"The party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 525 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The court should "view the evidence in the light most favorable to....the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 644-45 (4th Cir. 2002). The court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**Analysis**

A.  **Failure to Exhaust Administrative Remedies**

The court must first examine Defendants' assertion that Plaintiff's claim should be dismissed in its entirety due to Plaintiff's failure to exhaust available administrative remedies. The Prison Litigation Reform Act ["PLRA"] generally requires a prisoner plaintiff to exhaust administrative remedies before filing suit in federal court. Title 42 U.S.C. § 1997e(a) provides that "[n]o action shall be brought with respect to prison conditions under § 1983 of this title, or any other Federal law by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." The Supreme Court has interpreted the language of this provision broadly, holding that the phrase "prison conditions" encompasses "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). Thus, the exhaustion provision plainly extends to Plaintiff's allegations. His complaint must be dismissed, unless he can show that he has satisfied the administrative exhaustion requirement under the PLRA or that defendants have forfeited their right to raise non-exhaustion as a defense. *See Chase v. Peay*, 286 F.Supp.2d 523, 528 (D. Md. 2003).

The PLRA's exhaustion requirement is designed so that prisoners pursue administrative grievances until they receive a final denial of the claims, appealing through all available stages in the administrative process. *Id.* at 530; *Booth v. Churner*, 532 U.S. 731, 735 (2001) (affirming dismissal of prisoner's claim for failure to exhaust where he "never sought intermediate or full administrative review after prison authority denied relief"); *Thomas v. Woolum*, 337 F.3d 720, 726 (6th Cir. 2003) (noting that a prisoner must appeal administrative rulings "to the highest possible administrative

level"); *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002) (prisoner must follow all administrative steps to meet the exhaustion requirement, but need not seek judicial review); *see e.g*. *Gibbs v. Bureau of Prisons*, 986 F.Supp. 941, 943-44 (D. Md. 1997) (dismissing a federal prisoner's lawsuit for failure to exhaust, where plaintiff did not appeal his administrative claim through all four stages of the BOP's grievance process).

In Maryland, filing a request for administrative remedy with the Warden of the prison in which one is incarcerated is the first of three steps in the Administrative Remedy Procedure ("ARP") process provided by the Division of Correction to its prisoners. If this request is denied, the prisoner has ten calendar days to file an appeal with the Commissioner of Correction. If this appeal is denied, the prisoner has thirty days in which to file an appeal to the Executive Director of the Inmate Grievance Office ("IGO"). *See Chase*, 286 F.Supp. 2d at 529 no. 10; *see also* Md. Code Ann. Corr. Serv. §§ 10-201 to 210.

Plaintiff indicates in his complaint that he filed an administrative remedy procedure request but "nothing was done." Paper No. 1. Defendants maintains that Plaintiff filed no administrative remedies concerning any of his complaints. To the extent Plaintiff's letters to the Warden could be generously construed as instituting the administrative process, Plaintiff failed to pursue his remedies beyond sending those intitial letters to the Warden concerning his visitor and property. There is no evidence that Plaintiff sought and was denied an administrative remedy form for the complaints alleged here. Nor is there an allegation or evidence that he completed an administrative remedy request and submitted it to prison staff, but the request was never acted upon or delivered to the proper official. Rather, Plaintiff unilaterally decided that he would not participate in the remedy process. Plaintiff may not unilaterally decide to sidestep the administrative process. Unlike the circumstances in *Taylor v. Barnett*, 105 F.Supp. 483, 486 (E.D. Va. 2000), prison officials do not

appear to have frustrated Plaintiff's attempts at exhaustion; instead, Plaintiff through his own actions failed to initiate and pursue his administrative remedies. His claims are subject to dismissal for failure to exhaust administrative remedies.

**Conclusion**

Defendant's Motion to Dismiss, or in the Alternative for Summary Judgment, is granted. Judgment shall be entered in favor of Defendants and against Plaintiff. A separate order follows.


Date:  May 11, 2010                             _____/s/_____
                                                DEBORAH K. CHASANOW
                                                United States District Judge